IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TYRONE DEVON THOMAS,              )
AIS #171142,                      )
                                  )
        Petitioner,               )
                                  )
    v.                            )        CASE NO. 2:08-CV-891-WHA
                                  )                [WO]
                                  )
STATE OF ALABAMA, et al.,         )
                                  )
        Respondents.              )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for writ of habeas

corpus filed by Tyrone Devon Thomas ["Thomas"], a state inmate, on October 23, 2008.

In this petition, Thomas challenges a conviction for breaking and entering a vehicle

imposed upon him on March 15, 2006 by the Circuit Court of Montgomery County,

Alabama.[1]  The trial court sentenced Thomas as a habitual felony offender to twenty

years' imprisonment for this conviction.

Thomas filed a direct appeal of his breaking and entering a vehicle conviction.  On

direct appeal, appellate counsel, Thomas J. Azar, proceeded in accordance with *Anders*

*v. California*, 386 U.S. 738 (1967).  Although the Alabama Court of Criminal Appeals

allowed Thomas the opportunity to file a *pro se* brief raising issues for its consideration,

---

[1]Winston Durant represented Thomas during his trial.

*Respondents' Exhibit F - Court Doc. No. 11-7* at 2, Thomas failed to do so.

On December 15, 2006, the Alabama Court of Criminal Appeals affirmed Thomas' conviction for breaking and entering a vehicle in an unpublished memorandum opinion. *Respondents' Exhibit F - Court Doc. No. 11-7.* The appellate court "reviewed the record in this case and ... found no error harmful to Thomas's rights." *Id*. at 2. Thomas failed to further appeal his conviction and the appellate court therefore issued the certificate of judgment on January 3, 2007. *Respondents' Exhibit G - Court Doc. No. 11-8*.[2]

Thomas filed a *pro se* state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Montgomery County, Alabama complaining that trial counsel provided ineffective assistance when he failed to move for a competency determination. *Respondents' Exhibit I - Court Doc. No. 11-10* at 5-6. On April 25, 2007, the trial court appointed Thomas J. Azar to represent Thomas on his Rule 32 petition. *Id*. at 22. On June 20, 2007, counsel filed an amended Rule 32 petition in which he challenged Thomas' mental competency at the time of the offense and to stand. *Id*. at 31-34. He further argued that Thomas "was denied effective assistance of counsel because ... trial counsel [did not] conduct[] a cursory investigation or request[] a court ordered mental evaluation of the defendant prior to trial...." *Id*. at 35.

---

[2]Where further action is not undertaken upon a ruling by the Alabama Court of Criminal Appeals, the appellate court issues the certificate of judgment eighteen (18) days after entry of the court's opinion. Rule 41(a), *Alabama Rules of Appellate Procedure*.

Based on the claims presented in the Rule 32 petition, the trial court ordered a mental evaluation of Thomas.

Upon completion of the psychological evaluation and mental examination, the forensic psychologist, Karl Kirkland, Ph.D., deemed Thomas mentally competent at the time of the offense and to stand trial. *Respondents' Exhibit O* (*Forensic Psychological Report) - Court Doc. No. 15-1* at 7-8. In making this determination, the examiner noted:

> . . . the defendant was informed as to the purpose of the evaluation and the limited confidentiality involved.... He was also informed the result [of the evaluation] could be used in Court proceedings, either through testimony of the examiner and/or the written report, to assist in reaching decisions concerning his competency to stand trial and/or his mental state at the time of the alleged offense, but that none of the information could be used as evidence[] against him concerning his guilt of any charge. The defendant indicated he understood the purpose and limited confidentiality of the evaluation, agreed to proceed, and signed the notification form.

> \* \* \*

> **MENTAL HEALTH TREATMENT HISTORY**

> **Record Review - Department of Corrections**

> Medical records from the Alabama Department of Corrections were reviewed as a part of this evaluation. The Alabama Department of Corrections contracts out medical and psychiatric care to a private provider. Records reveal diagnoses of schizoaffective disorder, mild mental retardation and schizophrenia. Records further reveal auditory hallucinations, visual hallucinations, paranoid ideation, [and] depressed mood. Records also reveal that the symptom picture is controlled with medication. The inmate was treated with a major tranquilizer (Geodon) another major tranquilizer (Haldol), as well as a medication to control side effects (Benadryl). At times, he was also treated with a combination antidepressant/antipsychotic (Triavil).... Records also reveal a history of some depression.

3

**Record Review - Greil Hospital**

Tyrone Thomas was probate court committed to Greil Hospital [in] July [of] 2005. He was discharged on August 18, 2005. Discharged diagnoses included alcohol abuse; R/O substance abuse and mood disorder; R/O Schizoaffective Disorder, depressed type; antisocial personality traits; and hypertension. [Mr. Thomas] had been probate court committed to Greil Hospital after being admitted to Meadhaven on June 20, 2005 complaining of auditory and visual hallucinations as well as suicidal thoughts. He reported seeing animals that took on the form as humans. Heavy alcohol use preceded his admission. The acute problems included alcohol abuse, depressed mood, suicidal ideation, and psychosis with auditory and visual hallucinations. There were actually two Greil admissions, one between June 13, 2005 and June 17, 2005 and a second between July 11, 2005 and August 18, 2005. The current offense happened on September 19, 2004.

## REVIEW OF TRIAL TRANSCRIPT (4/10/06)

This examiner also reviewed the trial transcript provided by the Administrative Office of Courts. The transcript is of the entire trial of Mr. Thomas. The transcript reveals that both victims were subjected to direct examination and cross examination. Another witness was also subjected to direct and cross examination. Following this, Tyrone Thomas testified.

Mr. Thomas reports in his testimony that he came up to the home of the victims because he had gotten lost in the woods. He reports that he knocked on the door. He denied looking through or going through their vehicle. He acknowledged being in contact with the husband of the victim. He acknowledged being on the road but denied having a gun and denied firing a gun. His testimony appeared to be relevant and the transcript does not reveal difficulty with the communication process on the part of this defendant. The jury received instructions from Judge Hobbs. The jury began deliberations at 9:43 a.m. and returned to the courtroom at 10:18 a.m. with a question. The question revolved around trespassing versus breaking and entering and the court clarified the charges once again. The jury returned to deliberations at 10:22 a.m. and delivered a guilty verdict at 10:34 a.m..

## CRIMINAL HISTORY

Tyrone Thomas has a history of four previous DUI offenses.  He also has been in jail on multiple occasions for menacing and receiving stolen property.  He has been diagnosed with antisocial personality traits.

## CLINICAL ASSESSMENT

## MENTAL STATUS EXAM

Mr. Thomas was well oriented at the time of this assessment and the structure of his thoughts were logical.  His speech was normal in terms of flow, tone, rate, and rhythm.  His affect was somewhat flat.  He appeared somewhat withdrawn and depressed.  He did report feeling depression.  He was oriented to person, place, time, and situation.  He was able to concentrate.  He reports that he sometimes has problems with tremulousness of his hands but he was not trembling at the time of this assessment. He denied suicidal and homicidal ideation. He reports that the medicine is working good.  He is not currently experiencing any hallucinations.  He was able to discuss some past hallucinations.

Mr. Thomas appears to have very poor emotional insight.  He has a history of impulsive and poor judgment in some social situations....

Tyrone Thomas did not evidence impaired speech.  He has a marginal record of employment....  Tyrone Thomas was not working at the time of the alleged offense.  He was in the process of applying for disability benefits. He had been drinking moonshine on a regular basis but was not taking any street drugs.  He was attending the Mental Health Center which had prescribed him a major tranquilizer (Seroquel) and an antidepressant (Cymbalta).

* * *

## FORENSIC ASSESSMENT

## COMPETENCY TO STAND TRIAL

Rule 11.1 of the Alabama Rules of Criminal Procedure (ARCP) states that "a defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting the counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant.

.... Tyrone Thomas has been through a trial in this matter and was found guilty. This examiner had the benefit of reviewing trial testimony [and] ... specifically reviewed Mr. Thomas' trial [testimony] both on direct and cross examination. Mr. Thomas was evaluated utilizing the Competency to Stand Trial Assessment Instrument (CAI). The CAI consists of a semi-structured interview which assesses an individual's knowledge and functioning in 13 areas believed to be important in determining their understanding of the charge(s) against them and assessing their ability to participate in the legal process.

Mr. Thomas began this portion of the assessment by stating "I'm asking the court to give me some relief about my conviction - I should have had a mental evaluation - I was represented by Winston Durant - I didn't like him - he didn't help me.... [I] was merely off my medication at the time this happened and he should have asked for a mental evaluation and did not."

Currently Mr. Thomas was asked about his relationship with his court appointed [Rule 32] attorney Tom Azar. Mr. Thomas has a good relationship and a high degree of confidence in Mr. Azar. Mr. Azar has provided this examiner with extensive records from his office concerning this case.

Mr. Tyrone Thomas was evaluated relative to his ability to discuss the functions and roles of various court officials. With regard to his attorney, he stated "... he's there to help me." With regard to the District Attorney he stated "they're there to keep me in jail." With regard to the judge he stated "he's there to make a decision and make sure that I'm treated fairly - he listens to the case and makes sure everybody follows the rules." With regard to the jury he stated "they listen and say if you're guilty or not guilty." Mr. Thomas was able to remember and discuss that he had a jury trial previously. Mr. Thomas identified himself as the defendant. He indicated that witness would "tell what they saw." Mr.

Thomas appears to have little self-defeating or self-serving motivation.  He does have the capacity to disclose to his attorney pertinent facts about the offense including his movements, timing, actions, motivations, and mental state at the time of the offense.  He was able to discuss different legal defenses and was able to discuss his reasoning about why he should have had a mental evaluation in the first case....

* * *

## MENTAL STATE AT THE TIME OF THE OFFENSE

Section 13A-3-1(a) of the Alabama Criminal Code states that with regard to a mental state defense "at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts."

Tyrone Thomas was evaluated relative to his mental state at the time of the alleged offense.  He remembers that he was living with his brother-in-law and sister ... at the time....

Tyrone Thomas was applying for disability benefits at the time of his arrest in this matter.  He was taking Seroquel and Cymbalta but was unable to afford his medication through the Mental Health Center. As a result, he was off his medication at the time [of the offense].  The Mental Health Center usually provides medication at little or no cost.  So it is unclear why he would have been off his medication if he was compliant with his appointments at the time.  Further questioning reveals that he was not compliant with his appointments at the time due to transportation issues.  He had missed two months of appointments which may have been the real reason that he was off his medication.  As a result, he was drinking moonshine.

Mr. Thomas insists that he did not have a gun [in his possession at the time of the offense].  He reports that he decided to go fishing.  He was feeling stressed out and decided to go fishing near his brother-in-law's house.  He reports that he got lost in the woods and came out near the victim's house.  He went there for help and then reports that he had to jump up on top of their car because their dog came out barking and he was afraid of the dog.  He reports that he was stressed out due to family problems at

the time.  He believes that his stepfather had been sexually abusing his niece.  He told his mother about this event and the mother didn't believe him.  As a result, he was feeling very upset and confused at that time.  Mr. Thomas denies being a victim of sexual or physical abuse himself.  He reports that he did take fishing gear with him on the day in question but left it near the pond.  He reports that he was feeling upset and paranoid that day, but denies experiencing any hallucinations.  He certainly was not experiencing any command hallucinations at the time [of the offense] that were directing him to do anything.  As a result, it appears that he is not raising mental health issues with regard to the criminal responsibility question in this matter.  Rather, he is raising mental health issues that should have come into play through an evaluation for sentencing purposes according to his self-report....

### SUMMARY AND RECOMMENDATIONS

....  Assessment of his trial testimony suggests that he was capable of understanding his situation and fully participating in the process of the original trial.  With regard to mental state variables, Mr. Thomas alleges that he was lost in the woods and happened upon the victim's home and vehicle at the time of the alleged offense.  He denies any intention of breaking in and denies having a gun with him at the time.  This is consistent with his trial testimony.   While Mr. Thomas has been chronically mentally ill, his mental illness has also been complicated by alcohol abuse and dependence.  He had had approximately a half-pint of moonshine on the day in question.  While he may have been inebriated, he denies experiencing command hallucinations [at] the time in question.  He alleges that he was upset about some family problems.  It does not appear that there is any basis for believing that abnormal mental state variables caused the behavior in question on the day of the alleged offense....

*Respondents' Exhibit O* (*Forensic Psychological Report*) - *Court Doc. No. 15-1* at 2-8.

On January 17, 2008, the trial court held an evidentiary hearing on the Rule 32 petition.  At this time, counsel for Thomas conceded that "Dr. Kirkland believed that Mr. Thomas was, in fact, capable of understanding and participating in the trial process in the original trial.  And as to his mental state at the time of the alleged crime, [Dr. Kirkland]

also believed him to be competent." *Respondents' Exhibit I - Court Doc. No. 11-10* at 58. Counsel further stated "[b]ased on those findings, ... I believe the Rule 32 Petition ... is probably due to fail." *Id*. The trial judge then recalled "that Mr. Thomas testified on his own behalf, and I ... -- during the course of the trial, certainly didn't -- see or hear anything that would lead me to believe that [Thomas] was not competent during trial." *Id*. The State likewise advised "that the transcript from the trial ... indicate[s] that during cross examination ... [Thomas] indicated that he did understand the difference between right and wrong, and he did understand that breaking into a vehicle would be wrong which would be further evidence that he was competent." *Id*. at 58-59. The court next noted "the undisputed testimony ... was that he fled from the scene which is certainly consistent with someone who knows the difference between right and wrong. He knew that when the victim saw him, he needed to run away from the scene." *Id*. at 59. Thus, the trial court determined Thomas was competent to stand trial. *Id*. In addition, "based on Dr. Kirland's report, [the court found] there's no evidence that [Thomas] was incompetent at the time that he committed the offense. In fact, all the evidence ... indicate[s] that he was competent [at the time of the offense]." *Id*. at 61. The court also held that trial counsel provided effective assistance. *Id*. at 60.

On appeal from denial of the Rule 32 petition, counsel filed a no-merit brief pursuant to *Anders*. Additionally, Thomas filed a *pro se* brief raising the following claims for relief: (1) The psychological examination after sentence could not evaluate

mental status at the time of sentencing; (2) A member of the jury should have been excused due to a conflict of interest because the juror was married to the petitioner's second cousin; (3) The petitioner was not competent to stand trial; and (4) Appellate counsel was ineffective for failing to raise on direct appeal issues regarding mental status and the deficient performance of trial counsel. *Respondents' Exhibit L - Court Doc. No. 11-13* at 1. On August 1, 2008, the Alabama Court of Criminal Appeal issued a memorandum opinion denying Thomas relief on his claims. Thomas did not further appeal the denial of his Rule 32 petition.

In the instant federal habeas petition, Thomas asserts the following claims for relief:

> 1. Trial counsel provided ineffective assistance because counsel failed to seek a competency determination despite knowledge of the petitioner's mental illness "at the time of the alleged crime ... [and] when the trial was held." *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5.

> 2. A member of the jury should have been dismissed due to a conflict of interest because the juror "was a married in-law not on friendly grounds with petitioner...." *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 6.

In their answer to the petition, the respondents argue the claims pending before this court entitle Thomas to no relief. Specifically, the respondents contend that the juror misconduct and ineffective assistance of counsel claims are procedurally barred from

review because Thomas failed to present these claims to the state courts as required by the State's procedural rules either at trial, on direct appeal, in the Rule 32 petition or on appeal from the trial court's order denying the Rule 32 petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-1733 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).  In order to provide the state courts with the requisite full and fair opportunity to address his claims, "the petitioner [must] 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.  *Duncan v. Thomas*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404

U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)).  Exhaustion is not satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.'  *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted)."  *Pearson v. Sec'y for Dept. of Corr.*, 273 Fed.Appx. 847, 849-850 (11th Cir. 2008).

To the extent Thomas presents substantive claims challenging his mental competency at the time of the offense and to stand trial, the respondents argue these claims entitle Thomas to no relief from this court as the trial court properly adjudicated such claims on the merits during the Rule 32 proceeding.  *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).

Upon review of the § 2254 petition, the answer of the respondents, the state court records, opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the federal habeas petition is due to be denied.

## II.  DISCUSSION

### A.  Mental Competency - Adjudication by the State Court

Thomas' habeas petition is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."  *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

13

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an **unreasonable** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).

14

"Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court further admonishes that any such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...."  538 U.S. at 636, 123 S.Ct. at 1851.  Thus, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts."  *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007).  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

With respect to Thomas' substantive due process claims challenging his competency at the time of the offense and to stand trial due to his suffering from paranoid schizophrenia or any other mental illness, the record establishes that Thomas is entitled to no relief. The state trial court properly adjudicated these claims adversely to Thomas on the merits. *Williams*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1523. In finding no merit to the substantive competency claims, the trial court noted the findings of Dr. Kirkland's examination regarding the competency issues and its own recollection of the trial in finding that Thomas was competent both during his commission of the offense and at the time of trial. The relevant portion of this determination reads as follows:

> ... I have some recollection of the trial. I recall that Mr. Thomas testified on his own behalf, and I ... during the course of the trial, certainly didn't -- see or hear anything that would lead me to believe that he was not competent during the trial. If he had said or done something that had caused me to believe that, we would have taken it up at that time.
> ***
> In addition, the undisputed testimony, ... from the trial, was that he fled from the scene which is certainly consistent with someone who knows the difference between right and wrong. He knew that when the victim saw him, he needed to run away from the scene.
> ***
> ... [T]he Court finds that [Thomas] was, in fact, ... competent to aid in his defense at the trial.... [He was] acquitted on [one of the] charge[s] which means that the jury had to believe his testimony in that regard. So I think that, obviously, was reflected on his competency at trial.
> And based on Dr. Kirkland's report, I would find that there's no evidence that he was incompetent at the time that he committed the offense. In fact, all the evidence would indicate that he was competent. He fled from the scene of the crime. He later fled and was confronted by

some citizens about the crime, and he fled again which indicates a rational thought process. So based on all of that, I'm going to deny the Rule 32....

*Respondents' Exhibit I - Court Doc. No. 11-10* at 58-61.

With respect to claims of mental incompetence:

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *James v. Singletary*, 957 F.2d 1562, 1569-70 (11th Cir.1992) (citing *Pate v. Robinson,* 383 U.S. 375, 384-86, 86 S.Ct. 836, 841-42, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The test for determining competence to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S.Ct. at 789.

A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. *Id.* at 1571.... [H]owever, "a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Id.* A petitioner who presents "clear and convincing evidence" creating a "real, substantial and legitimate doubt" as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim. *Id.* at 1573 (quoting *Fallada,* 819 F.2d at 1568 n. 1). To show entitlement to a postconviction evidentiary hearing on a substantive competency claim, "the standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary,* 981 F.2d 481, 484 (11th Cir.1992) (quotations omitted), *cert. denied,* 510 U.S. 839, 114 S.Ct. 121, 126 L.Ed.2d 86 (1993). A presumption of correctness attaches to a state court's finding of competence and a federal habeas court must determine that the finding is not "fairly supported by the record" before it may overturn the state court's decision. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *Card,* 981 F.2d at 484 n. 5 (citing *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990))....
***

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Id.* at 487-88 (quoting *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir.), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985)). Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir.1976). The fact that a defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial. *Fallada,* 819 F.2d at 1569.

*Medina v. Singletary*, 59 F.3d 1095, 1106-1107 (11th Cir. 1995); *Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996) (same).

The aim of requiring that a "criminal defendant be competent ... [is] to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402, 113 S.Ct. 2680, 2688 (1993). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ***ability*** to understand the proceedings...." *Godinez*, 509 U.S. at 401 n.13 (citations omitted). "A trial court's failure to inquire into competency, *sua sponte*, where there is reason to doubt a defendant's competency, violates due process because it deprives the defendant of his right to a fair trial. *Drope [v. Missouri]*, 420 U.S. [162,] 172, 95 S.Ct. 896 [(1975)]; *Pate*, 383 U.S. at 385-86, 86 S.Ct. 836. But barring indicia of incompetence, due process does not require that a competency hearing be held. *Godinez*, 509 U.S. at 402 n.13, 113 S.Ct. 2680." *Taylor v. Horn*, 504 F.3d 416, 433 (3rd Cir. 2007).

The Circuit Court of Montgomery County, Alabama found no merit to Thomas'

substantive challenges to his mental competency. This Court must therefore review these claims in accordance with the directives contained in 28 U.S.C. § 2254(d)(1) and (2). *Williams v. Taylor*, *supra*. Upon thorough review of the record in this case, including the trial transcript, the documents filed by Thomas *pro se* in various court proceedings, and the psychological report prepared by Dr. Karl Kirkland, this court likewise concludes that Thomas "has not presented clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence [at the time of the offense] or to stand trial, ... and that his substantive competency claim is without merit." *Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir.), *cert. denied* 517 U.S. 1247, 116 S.Ct. 2505 (1996).

The Circuit Court of Montgomery County, Alabama did not decide Thomas' mental incompetence claims "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state trial court apply a rule that contradicts governing federal law. *Williams v. Taylor*, 529 U.S. at 413, 120 S.Ct. at 1523. Consequently, the rejection of this claim by the trial court was not contrary to actual Supreme Court decisions. Moreover, a thorough review of the evidentiary materials submitted in this case establishes that the state court's denial of Thomas' claims challenging his mental competency at the time of the offense and trial was objectively reasonable. The decision issued by the Circuit Court of Montgomery County, Alabama also constituted a reasonable determination of the facts in light of the evidence presented by the parties. Thomas is therefore due no relief from this court on any claims regarding

his mental competency.

### B.  Procedurally Defaulted Claims

The biased juror and ineffective assistance of counsel claims presented by Thomas in this petition for habeas corpus relief are procedurally defaulted as Thomas failed to present these claims to the state courts in accordance with the State's applicable procedural rules.  *O'Sullivan v. Boerckel*, *supra*.; *Henderson*, 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt v. Jones*, 348 F.3d at 1358-1359.  The record demonstrates Thomas first presented his biased juror claim in his brief on appeal from the denial of his Rule 32 petition.  Thus, Thomas did not raise the biased juror claim at trial, on direct appeal nor in his Rule 32 petition before the trial court.  The record further demonstrates Thomas failed to properly and fully pursue his biased juror and ineffective assistance of counsel claims after denial of his Rule 32 appeal by the Alabama Court of Criminal Appeals either in an application for rehearing or petition for writ of certiorari.  The respondents therefore argue that the aforementioned claims are procedurally barred from review by this court as Thomas did not properly present and completely exhaust these claims in the state courts.

As a prerequisite to filing a federal habeas action, the petitioner must have properly exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan,* 513

U.S. at 365 (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted));

*Kelley*, 377 F.3d at 1342-1344 (11th Cir. 2004) (a petitioner cannot raise claims in federal

court if those claims, including the factual basis for the claims, were not first properly

exhausted in state court.). To exhaust state remedies in accordance with the exhaustion

requirement, the petitioner must fairly present every issue raised in his federal petition to

each appropriate state court, including the state's highest court, alerting that court to the

federal nature of the claim and a statement of the facts which entitle him to relief.

*Duncan,* 513 U.S. at 365-366; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278.

"[F]or purposes of exhausting state remedies, a claim for relief in a habeas corpus must

include reference to a specific federal constitutional guarantee, as well as a statement of

the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163,

116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996); *McNair v. Campbell*, 416 F.3d 1291,

1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented

to the state courts."); *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591-

1592 (2000) (the exhaustion requirement is not satisfied when "the ineffective-assistance

claim was 'presented' to the state courts [but] not presented in the manner that state law

requires."). It is not sufficient merely that the federal habeas petitioner has been through

the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971), nor is it sufficient that all the facts necessary to support the claim were before

the state courts or that a somewhat similar state-law claim was made, *Anderson v.*

*Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).  The

petitioner must present his claims to the state courts such that they are permitted the

"opportunity to apply controlling legal principles to the facts bearing upon (his)

constitutional claim."  *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

> Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief.  For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992).  As we explained,
>
>> allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits."  The state would never have the benefit of evaluating the claim using a fully developed set of facts.  This would not be the "serious and meaningful" exhaustion of claims that Congress intended.
>
> *Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8th Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court.").  Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way.  *See Weeks [v. Jones]*, 26 F.3d [1030] at 1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").  In

sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.  In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-1344.  The court further advised that "[t]o ensure exhaustion, petitioners must present their claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.'  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary.  *See id*. at 848-49, 119 S.Ct. at 1734."  *Kelley*, 377 F.3d at 1345.

Thomas failed to properly exhaust his claims regarding a biased juror and ineffective assistance of trial counsel in the state courts and no remedy remains before those courts in which Thomas can obtain review of these claims.  The aforementioned claims are therefore precluded from federal review.  This court may reach the merits of Thomas' procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright*

23

*v.] Sykes*, 433 U.S. [72,] 87 [(1977)]....  Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id*."  *Henderson*, 353 F.3d at 892.

### 1.  <u>**Cause and Prejudice**</u>.

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.  The court provided Thomas an opportunity to establish cause for his defaults arising at trial, on direct appeal and in the Rule 32 proceeding and the requisite resulting prejudice.  *Order of February 9, 2009 - Court Doc. No. 16.* Thomas, however, failed to file a response to this order.

As previously determined, Thomas is procedurally defaulted on his federal habeas claims regarding a biased juror and ineffective assistance of trial counsel.  Moreover, Thomas would likewise be so defaulted on any claims of ineffective assistance of appellate or Rule 32 counsel alleged to establish cause as he failed to properly pursue and fairly present these claims in the state courts in available state proceedings.  Ineffective

assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently raised and properly exhausted in the state courts. *Edwards*, 529 U.S. at 453, 120 S.Ct. at 1592 (A federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to [the ineffective assistance claim]."); *Murray*, 477 U.S. at 489 ("[A] claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim). Thomas fails to establish cause and prejudice for his defaults on these claims. Thus, any claims of ineffective assistance of trial, appellate and/or Rule 32 counsel cannot constitute cause necessary to excuse Thomas' procedural defaults. In addition, the court finds that no allegations of ineffective assistance of trial and appellate counsel would justify Thomas' failure to properly exhaust the procedurally defaulted claims during the Rule 32 proceedings. Furthermore, with respect to any claim arising from the actions of Rule 32 counsel, the law is well settled that there is no federal constitutional right to counsel in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 556-557 (1987); *Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006), *modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006); *Henderson v. Campbell*, 353

F.3d 880, 892 (11th Cir. 2003); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993); *Presnell v. Zant,* 959 F.2d 1524, 1532 n. 6 (11th Cir. 1992).  Consequently, deficient representation during state collateral proceedings cannot establish "cause" for a procedural default.  "Since [the petitioner] had no sixth amendment right to counsel, he bears the burden of his failure to act in compliance with [the state's procedural rules]."  *McCoy v. Newsome*, 953 F.2d 1252, 1259 (11th Cir. 1992).

To the extent Thomas acted *pro se* during the Rule 32 proceedings and presumably suffered from a lack of proficient legal knowledge, such shortcomings provide no basis for relief from the applicable procedural bars as neither an inmate's lack of legal knowledge, his failure to understand legal principles nor the inability to recognize potential claims for relief at an earlier juncture constitute an extraordinary circumstance sufficient to warrant such relief.  *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990) (ignorance of the law fails to establish cause for a procedural default); *Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989); *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *Barksdale v. Lane*, 957 F.2d 379, 385-386 (7th Cir. 1992) (petitioner's *pro se* status does not constitute adequate grounds for cause); *see also Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law is not a factor which warrants relief from procedural bars); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally

does not excuse prompt filing.' *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999).");

*Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000), *cert. denied*, 534 U.S. 863, 122

S.Ct. 145, 151 L.Ed.2d 97 (2001) (lack of legal knowledge or legal resources, even in a

case involving a *pro se* inmate, does not warrant relief from a procedural bar); *Miller v.*

*Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (relief from procedural bar not justified by fact

that petitioner did not understand the law).

In addition, to the extent the petition can be construed to assert that Thomas'

mental health issues constitute cause for his defaults, Thomas is entitled to no relief as he

has failed to establish a causal connection between his alleged mental health issues and

his ability to file appropriate collateral actions in the state courts. *Lawrence v. Florida*,

421 F.3d 1221, 1226 (11th Cir. 2005).  Thomas performed rationally in all proceedings

before the state courts.  He understood the charges lodged against him, advised counsel

of  defenses to the charges lodged against him, understood the nature of all state court

proceedings, testified to relevant facts at trial, provided testimony in defense of the

charges, set forth lucid and relevant testimony at the Rule 32 hearing in support of his

claims for relief, filed *pro se* the initial post-conviction action with the trial court

challenging his conviction and presented issues *pros se* on appeal from the denial of his

Rule 32 petition to the Alabama Court of Criminal Appeals.

In sum, it is clear from the record in this case that during the periods relevant to

the procedural defaults at issue, Thomas had the ability to prosecute his state actions.

Additionally, Thomas' conduct of the instant federal litigation mitigates against any argument that his alleged mental illness caused his procedural defaults. There is nothing before the court which indicates Thomas' schizophrenia or any other mental illness affected his capability to participate in his defense or hindered his ability to comply with state procedural requirements in his state post-conviction action. Specifically, the evidence presented by Thomas does not establish that his conditions rendered him unable to properly exhaust his state court remedies during the relevant time periods. The court therefore concludes that Thomas' mental health conditions fail to establish cause for his procedural defaults. *Smith v. Newsome*, 876 F.2d at 1466 (where petitioner understood nature and consequences of state proceedings and acted throughout in a rational manner, "general mental condition is not legal cause for his default."); *Farabee v. Johnson*, 129 Fed. Appx. 799, 804 (4th 2005) (petitioner presented no evidence demonstrating "his mental illness interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation" and, therefore, failed to establish "that any mental illness actually caused his several defaults."); *Harris v. McAdory*, 334 F.3d 665, 669-670 (7th Cir. 2003) (neither borderline mental retardation nor frontal lobe brain dysfunction sufficient to establish cause); *Ervin v. Delo*, 194 F.3d 908, 916 (8th Cir. 1999) (petitioner's "alleged depression could not amount to cause excusing [petitioner's] procedural default" where the "alleged depression did not hinder his ability to file a pro se postconviction motion."); *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (absent

"conclusive showing that mental illness interfered with a petitioner's ability to appreciate his ... position and make rational decisions regarding his ... case at the time during which he ... should have pursued post-conviction relief[,]" mental illness does not constitute cause to excuse procedural default); *Stanley v. Lockhart*, 941 F.2d 707, 709-710 (8th Cir. 1991) (possibility pro se adult petitioner might not have been able to effectively participate in his defense given diagnosis of childhood schizophrenia insufficient to show incompetence at time of procedural default); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (petitioner's below-average intelligence insufficient to estabish cause); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's diagnosis as a "borderline mental defective" fails to establish cause for excusing a procedural default). Thus, there is no "objective factor external to the defense that prevented [Thomas] from raising the claim[s] and which cannot be fairly attributable to his own conduct." *Murray*, 477 U.S. at 488. In light of the fact that Thomas raised the claims in pleadings while proceeding *pro se* in both the state courts and this court, it is clear that such claims are not issues which are "intrinsically beyond [a] *pro se* petitioner's ability to present." *Harmon*, 894 F.2d at 1275.

Based on the foregoing, the court concludes Thomas has not demonstrated cause for his failure to present his biased juror and ineffective assistance of counsel claims to the state courts in compliance with applicable procedural rules. Furthermore, Thomas has presented nothing which establishes the existence of actual prejudice emanating from

infringement of federal law.  Nevertheless, this court may still reach the merits of Thomas' procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

    **2.  <u>Fundamental Miscarriage of Justice</u>**.  The miscarriage of justice standard is directly linked to actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id.* at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*.  "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.'  *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)."  *Bousley  v. United States*, 523 U.S. 614, 623 (1998).  "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary'" case."  *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006).  Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims."  547 U.S. at 537, 126 S.Ct. at 2077.  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.  *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)."  *Bousley*, 523 U.S. at 623-624; *Doe v.*

*Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").  *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....  To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324 (emphasis added).

Thomas has failed to make the requisite showing of actual innocence as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*.  Thomas' procedurally defaulted claims are therefore foreclosed from federal habeas review.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Tyrone Devon Thomas be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before January 21, 2011**, the parties may file objections

to the Recommendation.   Objections must specifically identify the findings in the Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the

 former Fifth Circuit handed down prior to September 30, 1981).

Done this 7th day of January, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE